Allen, P.
This was a bill filed by the appellee Jane Thompson, widow of William Thompson, to have her dower assigned to her in a tract of land purchased by, and conveyed to her husband during the coverture. It appears that William Thompson purchased the land from Thomas R. Blair as executor of Matthew Blair, and received an absolute conveyance therefor on the 25th of December 1830. The consideration expressed in the deed was two thousand and seventy-five dollars, the receipt of which was acknowledged on the face of the deed. On the 4th of June 1832, William Thompson executed a deed of trust on the land, and on a quantity of personal property, to secure the payment of the deferred installments of the purchase money, for the payment of which he had executed bis several single bills, with William C. Snapp as security, payable in six equal annual payments, the first falling due on the 25th of December 1832. Thompson thereafter took the oath of insolvency, and in November 1832 conveyed his equity of redemption to the sheriff, who made a return that he had sold the same to Thomas R. and Mathew Blair, to whom he conveyed it by deed dated the 27th of June 1834. On the same day Thomas R. Blair, Matthew Blair and William C. Snapp united in a deed conveying the land to Jacob Michael with covenants of general warranty, for the consideration, as expressed in the deed, of two thousand four hundred dollars; and Michael on the same day executed a deed of trust to secure the deferred installments. This deed was signed by both the Blairs, by Michael and the trustee, and with the other deeds of the same date, duly recorded.
*443 The bill makes the representatives of William Thompson, the administrator of Thomas R. Blair, Matthew Blair, William C. Snapp and Jacob the purchaser in possession of the land, defendants, and prays that her dower be decreed to her, to be laid off by metes and bounds; and that an account of the rents and profits be ordered; and for general relief.
Jacob Michael in his answer, admits the execution of the deed of trust to secure the deferred payments on the land; avers that the deed was executed in pursuance of the original understanding between the parties and William O. Snapp, that the land should be bound for the deferred payments; and insists that the vendor’s lien for the unpaid purchase money was not released or discharged as it respected the purchaser himself or his widow claiming dower in the land so purchased after the coverture. But should her claim to dower be sustained, he prayed in his answer, that the value of her dower interest should be ascertained in money, and a decree be rendered in her favor directly against William O. Snapp, Matthew Blair and the representative of Thomas R. Blair.
It is said by Chancellor Kent, 4 Kent’s Com. 153, “ That the taking the note, bond or covenant of the vendee is not of itself an act of waiver of the vendor’s lien ; for such instruments are only the ordinary evidence of debt. But taking a note, bill or bond, with distinct security, or taking distinct security exclusively by itself, either in the shape of real or personal property, from the vendee, or taking the responsibility of a third person, is evidence that the seller did not repose on the lien, but upon independent security ; and it discharges the lien. Gilman v. Brown, 1 Mason’s R. 212; Cole v. Scott, 2 Wash. 141; Brown v. Gilman, 4 Whart. R. 290. So too the presumption that the vendor intended to rely on the implied equitable lien, is repelled by the vendor’s taking a mortgage *444 on the property subsequent to the deed of conveyance vendee. Little & al. v. Brown, 2 Leigh 353. such case the vendee becomes the owner without qualification at the time of ■ the conveyance; he becomes beneficially seized for his own use; and the wife’s title to dower attaches, and cannot be divested by the subsequent incumbrance, unless she concurs therein.
In this case there was the personal security of a third person for the deferred payments, on which the vendor rested from the 25th of December 1830, until the 4th of June 1832, which of itself shows no lien was reserved; and the deed of trust upon that and other property would have superseded it. The purchaser Michael has not introduced any evidence to sustain the affirmative allegation of his answer, that the deed of trust was executed in pursuance of the original understanding "of the parties and William O. Snapp, that the land should be bound for the deferred payments. The court properly determined by the interlocutory decree of November the 1st, 1848, that the appellee was entitled to her dower, and that commissioners should be appointed to allot and assign the same to her.
The decree furthermore directed the commissioners to report what sum would be a fair annual rent or annuity for the dower estate, and what gross sum in fee, payable in presentí, would be a fair equivalent for the plaintiff’s dower interest. This pi-ovision of the interlocutory decree seems to have grown out of a prayer in the answer of the defendant Michael, that in the event of the claim to dower being sustained, the value thereof should be ascertained in money, and a decree be rendered directly against his vendors in favor of the appellee. In pursuance of this order the commissioners laid off the dower by metes and bounds, and ascertained the yearly rent; and a report was *445 made ascertaining the present fee simple cash value of the dower estate : And a final decree was rendered in favor of the appellee for the arrears of rent, and cash value of the dower estate, against said Michael. And the court furthermore proceeded to give Michael a decree over against his vendors, for the amount so decreed against him; and being satisfied that Snapp and Matthew Blair were only sureties of Thomas R. Blair in the deed and warranty to Michael, liberty was reserved to them, in the event of their being compelled to pay the sum decreed in favor of Michael, to apply for a decree against the estate of Thomas R. Blair; or the said M. Blair was, if he so elected, to be permitted to make a certain offset referred to in the decree.
From this decree the appellant Matthew Blair has appealed. The suit was a simple claim for dower to be laid off and assigned to the plaintiff in the court below, in lands of which she alleged her husband was beneficially seized during the coverture, and for an account of rents and profits. The purchaser in possession, Michael, holding the legal title by deed duly recorded, was the only necessary defendant, the only person against whom. the plaintiff was entitled to a decree. She had no privity with or claim against the intermediate parties through whom the legal title may have passed from her husband to the purchaser in possession. In giving the history of her claim, the bill set out the various alienations and made the vendors of Michael defendants, but asked no decree against them. It was for Michael’s benefit that they were made defendants, as it gave them notice of a claim for which they might be eventually liable on the warranty in their deed, and so enabled them to unite with him in resisting the plaintiff’s claim; but there was nothing in the allegations of the bill which raised any question as between the codefendants themselves. The right of the appellee Jane Thompson to have her dower assigned and the extent of it, was in nowise *446 dependent on the transactions between the codefendants. Yet the litigation and delay which the female has been compelled to encounter and submit ^ kag grown ou¿ 0f and been caused by matters to which she was a stranger, and entirely beside the issues raised by the bill and pleadings. The appellant Matthew Blair does not seriously controvert her right to have her dower assigned; but files an elaborate answer to show that he should not be held liable on the warranty in his deed to Michael; a matter foreign to the issue presented by the bill, and with which the female appellee had no concern. The final decree not only determines this question as between Michael and his vendors, though no issue had been raised between them, but proceeds a step further, and decides that as between these vendors, one was principal in the joint warranty and the other two were sureties.
But little is to be found in the English books in relation to proceedings in equity upon the subject of decrees between codefendants. The leading case on the subject is the case of Chamly v. Lord Dunsany, 2 Sch. & Lef. 689, decided in the house of lords. The case, according to Lord Chancellor Erskine,- was more entangled than any other he ever had to consider; but the general doctrine in regard to such decrees was laid' down by Lord Eldon and Lord Bedesdale. “ Wherever (said Lord Eldon) a case is made out between defendants by evidence arising from pleadings- and proofs between plaintiffs and defendants, a court of equity is entitled to make a decree between the defendants, and is bound to do so. The defendant chargeable has a right to insist that he shall not be liable to be made a defendant in another suit for the same matter which may be then decided between him and his codefendant. And the codefendant may insist that he shall not be obliged to institute another suit, for a matter which may be then adjusted between the defendants.” Conry v. Caulfield, 2 Ball & Beat. 255, was an instance of a *447 decree between codefendants upon evidence arising from pleadings and proofs between plaintiffs and defendants.
The case of Taliaferro v. Minor, 2 Call 190, presents the first instance in which the practice was adverted to in this court. That was a suit by distributees against two administrators for an account and distribution. The report ascertained a balance to be due by one administrator to the estate of the other administrator; and a decree was rendered for such balance by the chancellor. But upon appeal it was reversed, because no contest appeared between the administrators, in the record, nor any account of their separate transactions, except in the statement of the accounts by the commissioner. The principle of the case is that the pleadings raised no issue between the codefendants as to the state of accounts between themselves.
Roberts v. Jordans, 3 Munf. 488, was an injunction to a judgment obtained by the assignee of a bond against the obligor, upon the allegation of payments to the obligee and assignor. This court directed the injunction to be made perpetual as to such sum only as had been paid to the assignor before notice of the assignment; but gave the plaintiff a decree over against the obligee and assignor for any sums received by the latter after notice of the assignment, as soon as the plaintiff should have paid the judgment. This was not a decree between codefendants, but in favor of the plaintiff against one of the defendants for money improperly received by him on a note he had assigned to a third person.
The case of Dade v. Madison, 5 Leigh 401, is similar in principle to the case last cited; a decree over in favor of the plaintiff against a defendant ultimately liable to pay back to the plaintiff money he had been compelled to pay under the order of such defendant in favor of a third person.
*448 Ruffners v. Barrett, 6 Munf. 207, is to the same effect; an injunction by the obligor to a judgment in of the assignee, upon the allegation of payment obligee before notice of the assignment. Upon proof of payment after notice of assignment the injunction was dissolved as to the assignee; but leave was given to proceed against the assignor.
These cases, though referred to sometimes as instances of decrees between codefendants, are in fact cases in which decrees were rendered in favor of the plaintiff against one defendant upon a proper case made against him.
Morris v. Terrell, 2 Rand. 6, was a case of a decree between codefendants. The principal in that case filed a bill against Ms agent and a purchaser of land from the agent, to set aside a sale for which the agent admitted he had received the purchase money, upon the ground that the agent had no authority to sell. The sale was set aside; the principal restored to Ms property ; and the agent decreed to repay the purchase money received from the purchaser. In that case the authority of the agent to sell constituted the gravamen of the bill. His liability to refund to the purchaser resulted from the establishment of the fact,(that he had sold without authority; and the question was directly presented and arose from the allegations of the bill and the proofs to sustain them.
The case of Mundy v. Vawter, 3 Gratt. 518, agrees in principle with Morris v. Terrell. The bill of Vawter the substituted trustee, made the purchasers of the land and the previous trustees and others who had united in a deed to Dillard, defendants, alleging that the sale was without authority. The court so held as to one-fourth of the subject, and gave the plaintiff a decree therefor; and then decreed over in favor of the purchaser against Ms grantors, in the order of their liability, upon the ground set forth in the decree, that *449 the claim of the purchaser to relief upon the recovery from him, arose out of the decree against him upon the pleadings and proofs between the plaintiff and his grantors. There as in the former case, the authority to sell constituted the stress of the case; and upon that depended the liability to refund. Upon that question the issue was fully made up by the allegations of the bill to which the defendants ultimately made responsible to their vendee and codefendant, had an opportunity of responding by their answers. In another branch of the case of Mundy v. Vawter, the court refused a decree in favor of For veil against his codefendants, because the pleadings did not make a ' proper case for such decree.
In the case of Templeman v. Fauntleroy, 3 Rand. 434, the plaintiff charged that Fauntleroy an absentee, was indebted to him, and that the home defendant was indebted to Fauntleroy; and being a foreign attachment, he sought satisfaction of his debt out of the debt alleged to be due by the home defendant to the absentee. The fact of indebtedness was directly alleged in the bill and established by the report of the commissioner; and though the plaintiff took his decree against the absentee alone, and waived a decree against the home defendant, it could make no difference to the latter whether he should be decreed to pay to the plaintiff or to his codefendant and creditor, the absentee. A payment to either would have discharged his debt. The existence of the debt being alleged, the case between the defendants was fully made out by evidence arising from the pleadings and proofs between the plaintiff and defendants.
In Toole v. Stephen, 4 Leigh 581, a judgment in favor of the assignee against the maker of the note was enjoined on the ground of usury. It was insisted in this court, upon the authority of Chamly v. Ld. Dunsany, that the court below erred in not giving the *450 assignee a decree against the assignor a codefendant, when the judgment of the assignee was enjoined; but court affirmed the decree. In McNeil v. Baird, 6 Munf. 316, the plaintiff sought to enjoin the endorsee negotiable notes from proceeding to enforce them, on the ground of the failure of consideration and fraudulent concealment by the payee. The endorsee claimed to be an endorsee for value without notice; but as against the payee the equity in the bill was fully supported by the testimony. The court held that as both maker and endorsee were before the court, the endorser and payee should be first subjected to the payment of the notes; he being the principal debtor. In this case the liability of the payee arose out of the failure of the consideration and his own fraud; and this constituted the gravamen of the charge contained in the bill. And it appearing by his own answer, according to the report, that he had endorsed the notes for value, the case as between himself and his codefendant, was fully made out by evidence arising from the pleadings and proofs between the plaintiff and defendants; it being a case in which the plaintiff, in the event of his being compelled to pay the debt, would have been entitled to a decree upon the pleadings and proofs against the said defendant; and in fact the decree contained a provision for such decree in favor of the plaintiff.
In Allen & Ervine v. Morgan’s adm’r als. 8 Gratt. 60, the plaintiff, a judgment creditor of the intestate, filed a bill against the administrator of the debtor and his official sureties, charging a devastavit by the payment of debts of inferior dignity. Some of the sureties in their answers insisted that the devastavit had been' committed by the fraudulent application of the assets by the administrator to the payment of a debt due to another of the sureties ; and as the administrator was insolvent, they contended that this surety should be primarily liable, or that the other sureties *451 should have a decree over against him. This court held that although the plaintiff was entitled to a decree against all the defendants, there was in the allegations of the bill and pleadings, which raised an issue between the codefendants, so as to let in evidence as to their liabilities as amongst themselves; and that it was not therefore a proper case for a decree between them.
The case of Morris v. Terrell, 2 Rand. 6, and Mundy v. Vawter, 3 Gratt. 518, are the only cases in which the plaintiff was not entitled to a decree in any event against the defendant, as against whom a decree was made in favor of a codefendant. In Templeman v. Fauntleroy, and McNeil v. Baird, the plaintiff was entitled to a decree against the defendant charged in favor of the codefendant. In each case the liability of the party and the extent of it, arose from the facts which entitled the plaintiff to any relief. They were, therefore, necessarily charged in the bill; the defendant had an opportunity of responding in his answer; and the evidence applied directly to the issue thus made up by the pleadings.
Nothing of that kind appears in the present case. The widow was entitled to her dower in the lands to be assigned by metes and bounds, and to an account of rents and profits. The court had no authority to decree a sum in gross in lieu of dower except by the assent of all parties interested. She had therefore no right to a decree against the defendant Matthew Blair and his associates who conveyed to the purchaser Michael. And her right to a decree against him as the owner of the land could not be affected by the contracts and dealings between him and his vendors. Whether they were legally liable upon their warranty and the extent of that liability, and how far that legal liability might be affected by the matters set out in the answer of Matthew Blair, were questions not arising upon any of the allegations of the bill; and proof *452 in relation thereto could not have applied to any issue ma<ie by the pleadings.
In Hubbard v. Goodwin, 3 Leigh, 492, 522, Tucker, president, observed, “ That the practice of decreeing between codefendants should not be extended further than it had already gone. A defendant who answers the plaintiff’s bill does not always go on to state his own case as between him and his codefendant. There is no issue made up nor any provision for taking their testimony in reference to the peculiar matters in difference between them. And hence in many cases the contest between them cannot come fairly before the court.” And he further remarked, that a decree between codefendants was proper in no case where the plaintiff was not entitled to a decree against both or either. The cases of Morris v. Terrell, and Mundy v. Vawter, ubi supra, were cases in which the plaintiffs did not seek decrees against the defendant who was charged in favor of the codefendant; but they were different in all their circumstances from the case under consideration.
I think the decree here between the codefendants extends the practice further than any of the cases justify, and was unwarranted under the pleadings and proofs as applicable to them.
I also think the court erred in decreeing a gross sum against the purchaser in lieu of dower. As has been remarked, such a decree could be authorized only by the assent of all the parties interested. Herbert v. Wren, 7 Cranch’s R. 370; Wilson v. Davisson, 2 Rob. R. 384. The appellee Jane Thompson did not pray for such a decree in her bill. The defendant Michael asked that it should be ascertained in money, and a decree over be rendered in her favor against his vendors. It was ascertained in money, and a decree was rendered against him for the amount in her favor; and there was a decree over in his favor against the appellant. Prom this decree neither the widow nor Michael *453 have appealed; and if they were the only parties, their assent to the conversion into a gross sum might be presumed. Michael no doubt acquiesced it was substantially a decree against his warrantor for the amount of the widow’s claim. But as the appel1 # lants never assented to such a conversion of her claim into a gross sum, the decree would not bind them or furnish the measure of their liability in an action upon the warranty. I think therefore a reversal of the decree as to them draws with it a reversal of the entire decree, so as to leave the purchaser at liberty to proceed against his vendors upon their warranty for such damages as he may show himself entitled to. I think the decree should be reversed with costs against the appellee Michael; and the cause remanded with instructions to enter a decree in favor of the appellant Jane Thompson, for her dower as laid off and assigned to her by the commissioners under the interlocutory decree of the 1st of November 1848 ; to whose report there has been no exception; and also for the arrearage of rent ascertained by the report of the commissioner to which there has been no exception ; and for a decree for an account of rents and profits accrued since the 1st of June 1849, up to the period of entering the decree aforesaid.