Bouldin, J.
Without repeating the facts of this case, I propose to consider, in the first place, whether the appellee, Myers, on the pleadings and proofs in the cause, has made a case, as between himself and Strong, for the interposition in his behalf of a court of equity.
In his original bill, he claimed relief against -the second note mentioned therein—the note for $8,000—• upon the ground, first: That it was purely an accommodation note without consideration, and that nothing was due thereon to Strong. Secondly: That it was obtained by misrepresentation and false assurances, and was therefore fraudulent and void. And, on these grounds alone, he claimed that this note should be restored to him, to be cancelled. Both allegations are flatly denied by Strong in his answer; and neither is sustained by the proofs in the cause.
The note, it is true, was executed and delivered to Strong in advance of the period when, by the terms of the contract between himself and Myers, he was entitled to demand it; and in that aspect the delivery of the note to Strong may be regarded a favor or matter of accommodation, to the same extent precisely that the anticipation of the payment of any other debt payable at a future day might be considered a favor or matter of accommodation to the creditor. But, it is not true that it was, in any sense of the word, an aecommoda *400 tion note, as understood by the law merchant, or without consideration. On the contrary, when that note was executed Strong had expended on the building in progress of construction for Myers, one thousand dollars more in labor and material than the principal of the two notes delivered to Strong; and this work and mate-constituted the, consideration of the note in question; a consideration valid and sufficient in law to support the note even inter partes. The anticipation of the time when the delivery of the note could be demanded, cannot make the note itself accommodation paper, when at the time of delivery the work already done by Strong was, as we have seen, more than the value of the note.
My opinion, then, is, that the note wTas not accommodation paper, nor without consideration, but was strictly business paper in the hands of Strong, executed on valid and sufficient consideration. Hor is there any evidence in the record to establish the charge of fraud and misrepresentation. It is flatly denied by Strong, and wholly unsupported by proof.
These are the only grounds on which Myers, in his original bill, based his claim to equitable relief against the note for $8,000. He did not claim that an enquiry should be made into the amount of damages sustained by him in consequence of Strong’s failure to complete the building, and that he should be allowed such damages as a set-off' against the note in the hands of Strong and his assignees. Without alleging the existence even of any such damage, or asking for such enquiry, he merely claimed that the note itself was not business paper, was without consideration, was obtained by misrepresentation and false assurances, and should therefore be delivered to him, to be cancelled; allegations denied by the *401 answer of Strong, as we have seen, and not sustained by the evidence.
So far, then, as the note for $8,000 is concerned, my opinion is, that Myers has made by his original bill, and the proofs thereon, no case for the interposition in his behalf of a court of equity. He has made no case which would entitle him to relief, even were his claim against Strong alone, and the note still in the hands of the latter.
But an amended bill appears to have been filed, at what date the record does not show. And I will now en-quire, whether any claim for damages, by reason of the abandonment of the work, or any other equity against Strong, not alleged in the original biil, is properly made in that bill. It was evidently intended to introduce, as against Ould & Carrington, a new equity—-the chai’ge of usury, between them and Strong; and to state rather more minutely the character of their claim to the note; but not to make a new issue with Strong: and this is the more manifest when we see that Ould & Carrington are the only yiersons made defendants to the amended bill; and no others are required to answer it. It is true that the following recital of what is charged to appear in the original bill is made, viz : “And your orator showed unto your honor, that by reason of the said Strong’s violation of his contract aforesaid, your orator had been subjected to great and serious detriment and pecuniary injury; which injury, it is now more apparent than it was at the time of his filing said bill, will vastly exceed the amount of both the said notes given as aforesaid by your orator to said Strong.” But, in fact, the original bill showed nothing of the kind; no such charge or allegation is made in that bill; nor any damage or pecuniary loss even alluded to, except the harrassment and expense which he charged *402 would grow out of the attachments, &c. &c., of Strong’s creditors. Myers, when he filed that bill, was evidently content to rest upon the excess of $4,000 work and material over and above the two notes, which was forfeited to him by the terms of the contract, and was amply sufficient to cover all apparent damage. He asked no ac-of damages for breach of contract, in his original bill, and no such account in his amended bill.. The special relief prayed for in the amended bill was not a^a™s'*} Strong, by reason of any equities between Strong and Myers, but was againt Ould & Carrington alone, on •a state of facts applicable to them only; and as we have seen, they alone were made defendants to, and required to answer, this bill; and the general prayer was only'for “the relief prayed for in his original bill,” and for general relief. It will thus be seen, that neither in the original nor amended bill was the claim for damages, so earnestly argued at the bar, presented as a ground of equity or set-off against the notes which had been delivered to Strong. Ho inquiry into that matter was asked, either in the bills or before the commissioner. The appellee, Myers, seemed content with the forfeiture he had already realized, and has not attempted to show by evidence in the cause, that it was not ample to cover any real or even speculative loss arising from the breach of the contract. The fact in relation to that matter has not been put in issue in the pleadings; but so far as the record shows, the forfeiture is ample indemnity to cover all losses.
Under such a state of pleadings and proof, I am of ■ opinion that the appellee, Myers, has made no case of equity against the note for $8,000, even against Strong himself, were he still the holder thereof. "Were it necessary to decide the question, however, I would be prepared to hold that the question of damages was not left *403 open by tbe contract of the parties; but that the amount thereof was limited to the value of work and material, for which no notes had been issued at the-time the work was abandoned. This was the measure of damages agreed on by the parties themselves; and we think, in a case of this character, in which the damages must be of necessity to a great extent conjectural, the measure agreed on by the parties should govern the court. I agree with Best. G. J., when in the case of Crisdee v. Bolton, 3 Car. & Payne 240, he said: “ The law relative to liquidated damages has always been in a state of great uncertainty. This has been occasioned by judges endeavoring to make better contracts for parties than they have made for themselves. I think that the parties to contracts, from knowing exactly their own situations and objects, can better appreciate the consequences of their failing to obtain those objects than either judges or juries. "Whether a contract be under seal or not, if it clearly states what shall be paid by the party who breaks it to the party to whose prejudice it is broken, the verdict in an action for the breach of it, should be for the stipulated sum. A court of justice has no more authority to put a different construction on the part of an instrument, ascertaining the amount of damages, than it has to decide contrary to any other of its clauses. Our office is to ascertain the intent of the parties, and if it be not contrary to law, to carry their intent into execution. In the present case, no evidence has been adduced of the amount of damage sustained by the plaintiff,” &c. &c. I should be inclined to apply these words of the learned Ch. Justice to this case, were it necessary to decide the question; but I have shown, I think, that not being presented in the pleadings, it is not before us. Having made, then, no case even against Strong, were he the only defendant, it would seem to be a necessary eonse *404 QuenGe ^kat ^ere can bo case against Strong’s assignees, as it is clearly not a case of interpleader.
The charge of usury between Strong and Ould & Carrington, made for the first time in the amended bill, even if sustained by the evidence, on which we do not propose to intimate an opinion, would constitute no equity in favor of Myera; for he does not pretend that usury exists in the note. He would not be relieved from one dollar of the debt by establishing usury between endorser and endorsee ; but would still be compelled to pay it all. In this case, then, in which he has come to be relieved from the payment of the entire note, and has shown no equity to be relieved from any part of it, my opinion is, that he had no right to raise questions between other parties not affecting his own liability. Such questions might well be raised on a bill of interpleader, but not in this case.
I think the bill, so far as it sought to establish an equity as to the $8,000 note against Strong and his assignees, and attaching creditors, should have been dismissed; leaving those parties to litigate among themselves as to their respective rights in the tribunal already selected by them.
The appellee, Myers, not having shown himself entitled to a decree against Strong, or any other party in the cause, so far as the note for $8,000 is concerned, but it being proper that his bill should be dismissed as to all parties claiming that note, my opinion is, that there is no foundation for any decree between the defendants, in relation to that matter. In the latest case in this court on the subject, Glenn v. Clark, 21 Gratt. 35, Judge Staples delivering the opinion of the court, said: “The practice of decreeing between co-defendants is not much favored by the courts. There is an increasing indisposition to extend that practice further- *405 than it has already been carried. ’’Ibid. p. 39. In Hubbard v. Goodwin, 3 Leigh, 492, 522-3, Judge Tucker, speaking of decreeing between co-defendants, said: “ I think it has been done in no case where the plaintiff practice should not be extended further. “A defendant who answers the plaintiff’s bill, does not always on to state his own case as between him and his codefendant. There is no issue made up, nor any provision for taking their testimony in references to the peculiar matters in difference between them; and heuce in many cases the contest between them cannot come fairly before the court.” This language of Judge Tucker was quoted with approval by Judge Allen, delivering the opininion of the court, in Blair v. Thompson, &c., 11 Gratt. 441, 452; and it applies with peculiar force to this case. The contest here, on the pleadings, has been almost exclusively with Myers. The gist of the controversy was his right to the note for $8,000; and being of opinion that his bill should be dismissed, it would be carrying the doctrine of decrees between co-defendants beyond any reported case which has com e to my knowledge, to go on under such circumstances, and enter a decree between the co-defendants. I believe, with J. Tucker, that no case can be found in which there was a decree between co-defendants, when there was none for the plaintiff. I have, with a good deal of diligence, looked over the reported cases on the subject in England and America, and have found not one in which there was a decree between co-defendants, in the absence of a decree for the plaintiffs. Indeed, in almost all the cases, the decree between the co-defendants was a necessary result of the decree for the plaintiff. The rule laid down in the leading English case, Chamley v. Lord Dunsany, 2 Sch. & Lef. R. 690, as applied in the was not entitled to a decree against both or either. The *406 more recent case of Cottingham v. Earl of Shrewsbury, 3 Hare’s R. 627, is thus stated by Vice Chancellor ’Wigram: “ If a plaintiff cannot get at his right without trying and deciding a case between c0;defendants, the eoui’t will try and decide that case, and the co-defendants will be bound. But if the relief given to the plaintiff' does not require or involve a decision of any case between co-defendants, the co-defendants will not be bound by any proceeding which may be necessary only to the decree the plaiutiff obtains.” Ibid. p. 637. A fortiori, then would it be improper to bind co-defendants by a decree inter sese, when no decree at all is entered for the plaintiff. Such, as we have seen, seems to be the opinions of the judges of this court; and such was the direct decision of the High court of Errors and Appeals for the State of Mississippi, in the case of Arnold v. Miller ex’or & als.; 26 Miss. R. 152. The court held that “ those equities arising from the relief decreed, in the first instance, to the complainant, are proper to be adjusted between all the párties to the suit whose interests are involved in the subject matter of it, upon the principle of preventing multiplicity of suits.” Citing 1 Paige C. R. 268; 2 McCord Ch. R. 470; They go on to say : “The reason of this is manifest. But where the claim of one co-defendant against another does not result from the recovery of the demand of the complainant against one or both of them, we cannot see on what principle the right of one co-defendant to a decree against his co-defendant, in that suit can be justified. Here the complainant’s bill was in effect dismissed; and the answer did not assume the character of a cross bill: It was a simple denial of the complainant’s equity,” &c., &c. Ibid. p. 155-6. And a decree between co-defendants in that case, which in some of its aspects will be found to be very similar to the present, was reversed. My opinion is, that *407 in this ease there should have been no decree between the defendants in relation to the note for $8,000.
There is more difficulty as to the equity claimed by Myers against the 3iote for $5,000 first issued to Strong, and his right to a lien on the lumber of Strong which came to his possession, growing out of his contingent liability as surety for Strong to How, Knox & Co. Myers, in his bills, has prayed indemnity for this liability out of the lumber aforesaid and the note of $5,000 alone; and he calls on Strong to state where that note now is. Strong’s answer, as to this note, is evasive. He does not say that he had endorsed the note to another, and is no longer the holder thereof; but merely says that he does not know where the note is. This may be true, and he may still be the owner of the note; or he may have transfei’red it after maturity, subject, of course, to the equities of Myers. On these subjects we are wholly in the dark; and we are equally uninformed as to the existence or amount of any fixed liability of Myers for Strong. These matters, we think, should have bqen subjects of enquiry before a commissioner in the Chancery court, if desired by the counsel of the parties. Something has been said, however, at the bar, about an adjudication in another forum of the questions in relation to the note of $5,000. Such adjudication, if already made, may render any further litigation on that subject unnecessary; but nothing of the soit appears in this record; and we can only deal with what is before us. My opinion is, that the decree of the Chancery court should be reversed, with costs to the appellants, so far as it undertakes to adjust the lights of the appellants and the attaching creditors, as between themselves; and that so much of the bill as seeks to have the $8,000 note of Myers to Strong surrendered to Myers, to be cancelled, should be dismissed, with costs to the defendants, in the Chancery court; and, in relation *408 to the other matters in controversy, that a further decree should be entered in accordance with the principles above declared.
The other judges concurred in the opinion of Bout-din, J.
Decree reversed.