**Richmond.**

## WILSON v. BRANCH AND ALS.

January 25, 1883.

1. DOWER.—Unless impracticable to assign widow dower, in kind, a court of equity has no power against her will to decree sale of the real estate and give her money in lieu of dower.

2. IDEM—*Sale of the realty.*—The dower right of the widow must be settled before decreeing sale of the real estate.

3. DISABILITIES.—It is an acknowledged rule, that when there are two or more coëxisting disabilities in the same person, when his right of action accrues, he is not obliged to act until the last is removed. This is the rule under the statute of limitations.

4. IDEM—*Infant feme covert.*—If an infant, who is a married woman, makes an instrument voidable because of her infancy, the disability of coverture enables her to postpone the act of avoidance to a reasonable time after coverture ended.

5. AVOIDANCE—*Silent acquiescence.*—Where there is nothing more than silence, many cases hold that an infant's deed may be avoided at any time after reaching his majority, until he is barred by the statute of limitations, and that silent acquiescence for any period short of the period of limitation is no bar.

6. CASE AT BAR.—An infant *feme covert*, and her husband, in 1845, granted her "maiden land"—half of "Cedar Lawn"—to G., who next day conveyed it to the husband, who owned the other half. In 1876 he and she conveyed the whole in trust to secure his debt. He died in October, 1877. His will was probated in December, 1878. In March, 1879, B. and others filed a creditor's bill to settle his estate and subject his lands to pay his debts. In April, 1879, she answered, renouncing her husband's will, demanding dower in his lands, disaffirming her deed of 1845 as void by reason of her then infancy, and denying she had ever in any way ratified it. An account showed that the trust-debt, amounting to $1,532.89 was the only debt paramount to dower. The fee simple value of "Cedar Lawn" was $2,750. The court below decreed that she

had ratified the deed of 1845, when free from the disability of infancy, and without assigning dower, but reserving right to make all orders to protect the right of dower, decreed the sale of the whole tract to pay her husband's debts. On appeal here—

HELD:

    1. The decree of sale without previous assignment of dower, in kind, if practicable, or if impracticable, by compensation, was premature and erroneous.

    2. The record discloses no act done by the widow to affirm the deed of 1845, made during her infancy.

    3 Within a short period after she came of age, *and* was relieved of the disability of coverture, she disaffirmed her deed made during infancy, and thereby rendered it void.

    4. The trust deed of 1876 having been made during her coverture, cannot be regarded as affirming the deed made in infancy.

    5. The trust debt, however, having been acknowledged in the mode prescribed by law for married women, is binding upon the widow to the extent of the debt therein secured, and no further.

Appeal of Mrs. Bettie Wilson, widow of B. R. Wilson, deceased, from a decree rendered 17th March, 1880, in a chancery suit then pending in the circuit court of Greensville county, wherein W. J. Branch, surviving partner of himself and C. R. Bishop, late partners in the name of Bishop & Branch and others are plaintiffs, and the said Mrs. Wilson, D. R. Newsome, administrator with the will annexed of B. R. Wilson, deceased, W. S. Goodwyn, trustee, and others are defendants. The facts and points raised are fully indicated in the syllabus, and set forth in the opinion of the court.

*Collier & Budd,* for the appellant.

*George S. Bernard, Donnan & Hamilton,* and *W. H. Briggs,* for the appellees.

LACY, J., delivered the opinion of the court.

On the 9th September, 1845, B. R. Wilson, and Bettie Wilson, his wife, conveyed the maiden land of the wife to George Goodrum, who immediately thereafter reconveyed the same to

the husband, the said B. R. Wilson, which maiden land of the wife consisted of one undivided half of a tract of land called Cedar Lawn, situated in the county of Greensville. At the time of this conveyance, the wife, Bettie Wilson, was an infant, being then in her twentieth year.

On the 29th day of February, 1876, the said B. R. Wilson and Bettie, his wife, conveyed the whole Cedar Lawn tract of land to W. S. Goodwyn, trustee, to secure a bond of $1,463.85, due from the said B. R. Wilson to R. J. Lundy on the 29th day of February, 1880. The said B. R. Wilson and Bettie, his wife, continued to live upon and enjoy and use the said Cedar Lawn tract of land until the death of the said B. R. Wilson, which occurred October 27th, 1877. One-half this Cedar Lawn tract of land was the maiden property of Mrs. Wilson. The other half was acquired by purchase by the said B. R. Wilson.

At the December term of the county court, 1878, of the county of Greensville, the will of B. R. Wilson was admitted to record, in which the said Bettie Wilson was named as executrix; but the said Bettie Wilson on that day declined to take upon herself the burthen of the trust imposed by the will.

At the following March rules, W. J. Branch, surviving partner of himself and C. R. Bishop, of the late firm of Bishop & Branch, on behalf of themselves and all other lien creditors of B. R. Wilson, deceased, instituted suit against the parties interested to settle the estate of the said B. R. Wilson, and subject the same to payment of the debts of the said B. R. Wilson. In April following Mrs. Bettie Wilson answered, and renounced all benefits of the provisions made for her by her husband's will, and disaffirming the deed of 1845, by which during her infancy, she had parted with her title to an undivided moiety in the Cedar Lawn tract of land to George Goodrum. Her renunciation is as follows: "I, Bettie Wilson, widow of B. R. Wilson, deceased, do hereby renounce the benefit of the provisions made for me by the last will and testament of the said B. R. Wilson, deceased, admitted to probate in the county court of the county of

Greensville at its December term, 1878, and do hereby claim my rights at law in the estate of my said husband. Witness my hand and seal, this 23d day of April, 1879." Acknowledged on the same day, and admitted to record May 2d, 1879.

The allegations of the answer were according to the facts set forth already—that she was married in 1844, in her nineteenth year; conveyed her land by deed to Goodrum in 1845, when she was an infant; continued in the coverture until 1877, when her coverture was terminated by the death of her husband; that being an infant when she executed the deed to Goodrum the act was voidable, and that she then disaffirmed the same; that she had done no subsequent act to confirm the deed made in infancy; that within four months from the day when her husband's will was admitted to probate she had renounced the same.

Under the will she was to take the entire estate for life, and be "at liberty to bequeath in fee simple right one half of the same."

Under the various decrees in this cause, the debts of B. R. Wilson were ascertained, and the cause matured for hearing, and the facts, as stated above, being agreed, the circuit court decreed the sale of the Cedar Lawn tract of land, to pay the debts of the said B. R. Wilson, deceased, without assigning dower to the said Bettie Wilson in the same, although the account of debts, and of the real estate of said Wilson, as reported by the commissioner to whom the same had been referred, showed the said real estate to be worth more than the debt secured by the trust deed of 1876, which appears to be the only debt which is paramount to the widow's dower.

And we find the following in the decree:

" And the court being of opinion that the defendant, Bettie Wilson, has ratified, approved and confirmed, when free from disability, the deed made by her during her minority in the proceedings mentioned, the court doth so adjudge, order and decree," and reserving the right to make a further enquiry as to the personal property claimed as a homestead exemption by

the late B. R. Wilson, and further reserving the right to make all necessary and proper orders for the protection of the dower interest of the defendant, Bettie Wilson, in the real estate in the proceedings mentioned, decreed the śale of the entire real estate of the said B. R. Wilson, and also the lands which we have seen were the maiden property of the widow.

From this decree Mrs. Bettie Wilson, the widow, appealed.

It does not appear from this record that it was impossible to assign dower to the widow, in kind, but the contrary.   The tract of land consisted of two hundred and fifty acres, and the trust deed debt was, principal and interest, $1,532.89, while the fee simple value of the real estate was reported to be $2,750.   It does not appear that the dower could not be assigned and the residue sold to pay the creditor secured by the trust deed, with the right reserved to proceed farther against the dower if the trust deed debt was still unsatisfied.   It is not pretended that the dower was barred by another debt.   In the case of *White* v. *White*, reported in 16th Grattan, 267, Judge Lee, speaking for the whole court, said: "The court is of opinion that as it is not made to appear that it was impossible to assign to the appellant her dower of and in the real estate of her husband, it *was not competent for the court of equity, in the exercise of its general power, to decree a sale of the whole property*, and to provide a compensation in money to the appellant in lieu of her dower against her will and without her consent."

In the case of *M. Blair* v. *Thompson and others*, 11 Gratt. 451, Judge Allen in delivering the opinion of the court says: "The widow was entitled to her dower in the lands to be assigned by metes and bounds.  * * * * *  The court had no authority to decree a sum in gross in lieu of dower except by the assent of all parties interested."   And also, Judge Allen says: "I also think the court erred in decreeing a gross sum against the purchaser in lieu of dower.   As has been remarked such a decree could be authorized only by the assent of all the

parties interested." See *Herbert* v. *Wren*, 7 Cranch's R. 370; *Wilson* v. *Davisson*, 2 Rob. R. 384.

In the case of *Simmons* v. *Lyles*, reported in 27 Grattan, 929, Judge Staples in delivering the opinion of the whole court said: "The court is further of opinion, that dower is to be assigned of one-third of the real estate whereof the husband was at any time siezed during the coverture; that such assignment must be in kind by metes and bounds if required by the widow.

When an assignment in kind is impracticable, from the nature of the husband's interest, or from the nature and quality of the property itself, it will of course be dispensed with, and some other mode adopted. But the court is not authorized to substitute a commutation or a compensation in money merely because dower in kind may prove to be injurious to the interests of the heirs or creditors. The right of the widow is a legal one, and is paramount to any and every claim or lien created by the husband after the marriage. In *White* v. *White & als.*, 16 Grattan, 264, this court laid down the rule on this subject in the strongest possible manner." This case of *White* v. *White*, &c., we have already considered above.

We have thus seen that it is error to decree a sale of the real estate without first settling the dower right of the widow. The court in this case decrees a sale of all the real estate, and then reserves the right hereafter to make suitable provision for the dower rights of the widow. The court should have first determined the question whether dower could be assigned to the widow in kind, and if that was impracticable, then a suitable compensation should have been made to the widow.

We will now consider the rights of the widow in the undivided moiety of the tract of land called Cedar Lawn, which was her maiden property.

It is admitted and proved that the wife was an infant when she executed the deed of 1845, conveying this land to Goodrum, who conveyed to her husband. This deed, being the deed of an infant, was voidable when she came of full age.

See *Mustard* v. *Wholford*, 15 Gratt. 339. In that case an infant sold his tract of land, and put the purchaser in possession, and executed a bond in a penalty with a condition to make the title. The infant on coming of age sold the land to another person. This was held to be a disaffirmance of the contract made in infancy. The effect of the disaffirmance of the first contract of the infant, by his sale after coming of age, was held to render the first contract void.

Judge Moncure, in delivering the opinion of the court in that case, says: "The only contract binding on an infant is the implied contract for necessaries; the only act which he is under a legal incapacity to perform, is the appointment of an attorney. All other acts and contracts executed or executory, are voidable or confirmable by him at his election." 2 Kent's Com. 235; Hare & Wallace notes in case of *Tucker, &c.,* v. *Moreland,* 1 American Leading Cases, p. 225–267. When a voidable contract of an infant is disaffirmed by him, it is made void *ab initio* by relation, and the parties revert to the same situation as if the contract had not been made. 1 Am. Leading Cases, 259; *Boyden* v. *Boyden, &c.,* 9 Metc. R. 519–521. If the contract was one of sale by the infant, he becomes reinvested with his title to the property, and may demand and recover it not only of the vendee, but of any other person who may have it in possession. The right of an infant to avoid his contract is an absolute and paramount right superior to all equities of other persons, and may, therefore, be exercised against purchasers from the vendee. 1 Am. Leading Cases, 258; *Myers, &c.,* v. *Saunders's Heirs,* 7 Dana's R. 507–521, and *Hill* v. *Anderson,* 5 Smedes & Marshall R. 216–224. The right of an infant to avoid his deed upon coming of full age cannot now be questioned. How long after full age this right subsists, and within what time this disaffirmance of the voidable act must be made, is a question we will consider. It may be assumed that such disaffirmance of the infant, upon arriving at full age, must be within a reasonable time, for such is the well settled doctrine. What was a reason-

able time in this case? She gave notice of her disaffirmance within eighteen months after she· became discovert, and within four months after the admission of her husband's will to probate and record, as we have already seen. This was, however, about thirty-two years after she attained her majority.

The circuit court in this case decreed the sale of the land of the infant, conveyed, as we have seen, by her in infancy to pay the debts of her husband, upon the ground that she had not disaffirmed the deed within a reasonable time, and that "she had ratified, approved and confirmed, when free from disability, the deed made by her during her minority."

It is well settled that she could not be required to disaffirm her deed upon coming of full age. During her coverture she was *sub potestate viri*. Her disability, during her coverture, was even greater than that of an infant, and it is settled that an infant cannot confirm his deed during his infancy. *Zouch* v. *Parsons*, 3 Burr, 1794; *Roof* v. *Stafford*, 7 Cow. (N. Y.), 179.

Why should not the greater disability of coverture be attended with the same consequences? What is a reasonable time to disaffirm is nowhere determined in such a manner as to furnish a rule applicable to all cases. The question must always be answered in view of the peculiar circumstances of each case, *State* v. *Plaisted*, 43 N. H. 413; *Jenkins* v. *Jenkins*, 12 Iowa, 195. It must be admitted that generally the disaffirmance must be within the period limited by the statute of limitations for bringing an action of ejectment.

It is obvious that delay, in some cases, could have no justification, while in others it would be quite reasonable.

If an infant, who is also a married woman, makes an instrument voidable because of her infancy, the disability of coverture enables her to postpone the act of avoidance to a reasonable time after the coverture is ended. 2 Bishop's Married Women, · section 516.

It is an acknowledged rule, that where there are two or more coexisting disabilities in the same person, when his right of

action accrues, he is not obliged to act until the last is removed. 2 Sugden on Vendors, 103–482; *Mercer's Lessee* v. *Selden*, 1 Howard, 37. This is the rule under the statute of limitations. But Mrs. Wilson was under disability to sue and to avoid this deed until her husband's death. During his lifetime she could have done nothing but give notice, and that simply "would have been a vain thing," and the law does not require the performance of vain things. See *Dodd* v. *Benthal*, 4 Heiskell (Tenn.), 601; *Matherson* v. *Davis*, 2 Caldw. (Tenn.) 443.

In the former case it was decided that an infant, who is also a married woman, has the option to dissent from her deed within a reasonable time after her discoverture, though her coverture may continue for more than twenty years. And if this were not so, the disability of coverture, instead of being a protection to the wife, as the law intends, it would be the contrary; and why should this not be so? The person who takes a deed from an infant *feme covert*, knows that she is not *sui juris*, and that she will be under the control of her husband while the coverture lasts. He is bound also to know that she is an infant. He assumes, therefore, the risk attending both these disabilities. These are general principles applying to all cases of like kind.

In the case at bar, the principles are not altered by the reconveyance to her husband. See *Sims* v. *Everhardt*, 12 Otto. 300.

We are aware that the decisions respecting the disaffimance of an infant's deed are not in entire harmony with each other. While it is generally agreed that the infant, to avoid it, must disaffirm it within a reasonable time after his majority is attained, they differ as to what constitutes disaffirmance, and as to the effect of mere silence. When there is nothing more than silence, many cases hold that an infant's deed may be avoided at any time after reaching his majority until he is barred by the statute of limitations, and that silent acquiescence for any period less than the period of limitation is not a bar. See *Irvine* v. *Irvine*, 9 Wallace, 617. See also *Prout* v. *Wiley*, (28 Mich., 164.) and *Lessee of Drake* v. *Ramsey*, 5 Ohio, 251.

In the case of *Sims* v. *Everhardt, supra,* Justice Strong says farther: "We think the preponderance of authority is, that in deeds executed by infants, mere inertness or silence, continued for a less period than that prescribed by the statute of limitations, unless accompanied by affirmative acts, manifesting an intention to assent to a conveyance, will not bar the infant's right to avoid the deed. And these confirmatory acts must be voluntary.

"As we have said, one who is under a disability to make a contract, cannot confirm one that is voidable, or, what is the same thing, cannot disaffirm it. An affirmance or a disaffirmance is in its nature a mental assent, and necessarily implies the action of a free mind, exempt from all constraint or disability." *Same case.*

Mrs. Wilson did no act in this case to affirm her deed of 1845, made during infancy. Within a short period after she came of age, and was relieved of the disability of coverture, she disaffirmed her deed made during her infancy. This deed is thereby rendered void. The trust deed of 1876 was made during coverture, and cannot be regarded as affirming the deed made in infancy upon the principles already stated.

But this deed was acknowledged in the mode prescribed by law, for married women, and is binding upon the wife as to the debt therein secured, and no farther, and the circuit court erred in deciding that the execution of this trust deed by the wife to secure a particular debt, operated as an affirmance of the deed of 1845, made during infancy, and so extended its operation, beyond the debt secured by its terms, and for the benefit of creditors not parties to the deed. The circuit court erred in decreeing the sale of the Cedar Lawn tract of land without first deciding the same, so as to save to the wife her undivided moiety which was her maiden property, and in selling the residue without laying off and assigning to the widow her dower in kind by metes and bounds, or first ascertaining that it was impracticable to so assign the dower.

As we have said, the Cedar Lawn tract of land is liable to the Lundy debt secured by the trust deed of 1876, and, may properly be subjected to its payment, and the one-half belonging to the husband, B. R. Wilson, is liable to the other debts mentioned in the record only after dower assigned, and the undivided moiety of the wife is not liable to any debt except the Lundy debt.

The decree was as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous; that the deed bearing date September 8th, 1845, is void as to the appellant, and that the said circuit court erred in not so declaring; and the appellant is entitled to have her dower assigned in the real estate of her deceased husband, by metes and bounds, if practicable, before a sale of the said real estate, and that the circuit court erred in not so declaring.

Therefore, it is decreed and ordered that the decree aforesaid be reversed and annulled, and that the appellee, W. J. Branch, out of his proper goods and chattels, pay to the appellant her costs by her expended in the prosecution of the appeal aforesaid here, and this cause is remanded to the said circuit court with directions to have assigned to the appellant her dower in the real estate of her deceased husband; and otherwise proceed in order to final decree in conformity with the opinion hereinbefore expressed, which is ordered to be certified to the circuit court of Greensville county.

DECREE REVERSED.