## CIRCUIT COURT OF FREDERICK COUNTY

Winchester Memorial Hospital, Inc.

v.

Ashbury Boyce et al.

### Case No. (Law) 4061

By JUDGE ROBERT K. WOLTZ

### May 25, 1984

This action involves the liability of the parents of an infant and the infant for hospital services rendered to the infant in the performance of an elective abortion on her and for subsequent hospital services as a result of medical complications from the abortion.

The facts as culled from the memoranda of counsel and without contravention of other representations are: the defendant Susan, now an adult, at the time in question was living with her defendant parents. She was seventeen years old, unmarried, unemancipated, attending school, and dependent on them though she had a part-time job and was making her own payments on a car. In the second trimester of her pregnancy at approximately nineteen weeks with the knowledge of her parents, she consulted a physician concerning an abortion. The parents were opposed to the abortion, at least partly on religious grounds. Without their consent but generally with their knowledge, she determined to have the abortion and entered the plaintiff hospital for that purpose July 10, 1980, filling out the

various admittance forms herself. Her reason for desiring the abortion was that she "didn't want to have any kids."

The abortion was performed and she was discharged from hospitalization July 12, returning to her parents' home. On July 13th she was readmitted to the hospital because of medical complications related to and following the abortion, was treated for them and discharged several days later, returning to the family home.

The total claim for her hospitalization was $1,344.20, of which $389.75 was for the first hospitalization and $954.45 for the second. The plaintiff instituted suit for the full amount of the claim against the parents apparently in November, 1981, on a warrant in debt. For some reason, judgment was vacated in that proceeding and in the interim before further hearing, the plaintiff in like manner sued the infant Susan, who had become an adult, in the same manner for the same amount. The two cases were heard and appealed and come to this Court in consolidated fashion.

Necessary for consideration in making decision are the common law doctrine of necessaries, whether the hospital services furnished constitute necessaries, the respective liability of infant and parent for an infant's contract for necessaries, whether the hospital services furnished constitute necessaries, the respective liability of infant and parent for an infant's contract for necessaries, principles relating to affirmance or disaffirmance of their contracts by infants, and constitutional issues regarding rights to abortion. Related to one or more of these issues is any significance which can be attributed to the fact that § 18.2-76, Code 1950, a criminal statute on abortion, was amended by Acts 1979, c. 250, deleting the requirement for consent by a parent as prerequisite to the abortion of a minor. Also involved is the construction and effect of § 54-325.2(D), especially paragraph 2 thereof, which provides, "A minor shall be deemed an adult for the purpose of consenting to. . . 2. Medical or health services required in case of birth control, pregnancy, or family planning except for the purposes of sexual sterilization."

Under the category of duties owed by parents to legitimate children, Blackstone lists maintenance, protection, and education. He states that the obligation of maintenance is one of natural law. 1 *Commentaries on*

*the Law of England*, 434 and 435 (Fac. ed. 1765). This duty he limits to the provision of "*necessary* maintenance" (emphasis in original), anything above that is dependent on "the favor of their parents, or the positive constitutions of the municipal law." *Id.*, 436.

Necessaries are defined in *Black's Law Dictionary*, 3d ed. 1944, as follows:

> Things indispensable or things proper and useful, for the sustenance of human life. This is a relative term, and its meaning will contract or expand according to the situation and social condition of the person referred to.
>
> In reference to the contract of infants, this term is not used in its strictest sense, nor limited to that which is required to sustain life. Those things which are proper and suitable to each individual, according to his circumstances and condition in life, are necessaries, if not supplied from some other source.

This modern definition being somewhat more flexible and expansive than Blackstone's view increases the difficulty of determining what are necessaries among the myriad goods and services available in modern-day society. Even with Blackstone, however, the definition of necessaries could include by way of expansion items related to protection and education, the other two parental duties required. In fact it was on the question of educational items in *Bear's Adm'x. v. Bear*, 131 Va. 447 (1921), that the Court was dealing when it stated that determination of what are necessaries is governed by the following: "It is for the court to determine, as a matter of law, in the first place, whether the thing supplied may fall within the general classes of necessaries, and if so, whether there is sufficient evidence to warrant the jury in finding that they were necessary."

Generally, the contract of an infant is voidable, not void, and subject to affirmation or disavowal after arriving at majority. 9B Michie's Juris., *Infants* § 3. The principal exception to this rule is contracts for necessaries consistent "with an infant's station in socie-

ty," and these are not voidable by him on the ground of infancy. *Id.*, § 5.

"Necessary" is now interpreted with greater liberality than in Blackstone's day to include more than "bare necessities" and takes into consideration the infant's station in life. As stated in 59 Am. Jur. 2d, *Parent and Child* sect. 55:

> Modern authorities are inclined to extent the term to include many of the conveniences of refined life, according to the circumstances and conditions of those concerned. And the modern tendency is to require more if the parent can afford more. Thus it has been held that, in addition to the actual needs of the child, a father has a legal duty to give his children those advantages which are reasonable considering his financial condition and his position in society.

Medical services "reasonably required" are generally considered necessary to an infant. Annot., 71 A.L.R. 226, 227. Furthermore:

> Since articles are not necessary for an infant if he has a parent or guardian who is able and willing to supply them, it has generally been held that an infant is not liable for necessary medical, dental or hospital expenses when he is living with, and being supported by, his parents. If the parent has refused or is unwilling to supply necessary medical or dental attention, or has neglected or failed to supply it, the infant is held liable therefor. 42 Am. Jur. 2d, *Infants* § 72.

Constitutionally, the landmark cases of *Roe v. Wade* and *Doe v. Bolton*, 410 U.S. 113 and 179 (1973), based on the right of privacy, denied to the States the right absolutely to forbid all abortions, at least in the first "trimester," and to a large extent, depending on the matter of "viability" of the fetus during the second trimester. *See also Akron v. Akron Center for Reproductive*

*Care*, 462 U.S. 416 (1983); *Planned Parenthood Association of Kansas City v. Ashcroft*, 462 U.S. 476 (1983); and *Simopoulos v. Virginia*, 462 U.S. 506 (1983). As an extension of those holdings, it was then decided that the states may not impose as a prerequisite to abortion the consent of a parent of a minor (or the consent of a husband of a married woman). *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 (1976); *Bellotti v. Baird, II*, 443 U.S. 622 (1979).

Although these cases establish a constitutional right for a pregnant woman, including unmarried minors, to have abortions performed during the first and second trimesters with a high degree of freedom from state mandated restrictions, this does not necessarily convert hospital services attendant on an abortion into a necessary. While the constitutionally established right to an abortion may affect the general social backdrop or standards against which this surgical procedure may be judge as necessary or unnecessary, confusion results from transposing the constitutional right to abortion into a common law medical necessary. Such a metamorphosis is unjustified. A minor may have a constitutional right to self-expression but that will not serve to convert the expenses of publishing a minor's book, however excellent a work, into a necessary.

Next the statutes mentioned are examined. Section 18.2-76 is one of the sections of the criminal law dealing with abortions. It sets up certain prerequisites incumbent on the physician before an abortion can be performed legally. The 1979 amendment had the effect of deleting language which prevented a minor from giving the required written consent to the abortion. This legislative action is clearly in response to the holdings of *Planned Parenthood* and *Baird, II, supra*, generally making abortion available to minors on the same basis as to adult females and specifically eliminating requirements that parental consent be given on behalf of the minor as a prerequisite to legal abortion. As a consequence, I do not find this legislative action taken in the context of necessaries, and contracts of infants raises a minor to the status of an adult for those purposes. This statutory change does not alter the principles respecting the liability in this case of the defendant infant.

Section 54-325.2 deals with consent in certain circumstances for medical treatment of minors Subsection A provides for such treatment where the minor is separated from the custody of parent or guardian; subsection B relates to consent where parent or guardian is nonresident, unknown or cannot be consulted with the promptness needed under the circumstances; and subsection C provides health care providers with protection against liability where delay in rendering medical services might be adverse to the minor and no person is available to give timely consent. Subsection E gives a minor who has been married power to consent to medical treatment except for sexual sterilization, and subsection F deals with consent of minors seventeen and above to donate blood.

Subsection D deems a minor to be an adult for purpose of consent not only to medical services involving birth control, pregnancy, or family planning as mentioned in paragraph 2, but also for diagnosis and treatment of venereal and other infectious diseases required by the State Board of Health to be reported, treatment, and rehabilitation for substance abuse and for treatment and rehabilitation for mental or emotional disorders.

A reading of this subsection and the section as a whole, which is properly necessary to construe its meaning, discloses an intent to benefit minors in relation to medical treatment. This is done principally in two respects: it affords the specified medical services under the circumstances stated without necessity of parental consent and in certain instances absolves the health care provider from liability for rendering services, without parental consent, to a minor. The object of the statute is to make medical services more readily available to minors, not to chill the use or reception of these services by minors by raising them to the status of adults for the purpose of subjecting minors to the contractual liability which the law imposes on adults. Consequently, § 54-325.2(D)(2) does not make the infant in this case contractually liable for the abortion services rendered her by the plaintiff hospital.

Respecting the hospital services rendered to the infant during her admission for the performance of the abortion, it is my opinion that in this case, those services did not constitute necessaries. For that reason, the

defendant parents are not liable for the $389.75 charged by the plaintiff for such services. It is further my opinion that the contract for those services by the infant is not void but in accordance with the general rule voidable only. She was seventeen at the time of the abortion but an adult at the time of suit. Her contract is valid until disaffirmed. Michie's Juris., *Infants* § 6. Though the disaffirmance by an adult of a contract made while an infant need not be express but by implication, *Id.*, sect. 7, assuming a disaffirmance, it must to be effective be made within a reasonable time depending on the circumstances of the case. *Id.*, § 8. As the record does not disclose the birth date of the former infant nor matters relating to possible disaffirmance prior to her resisting this suit, there is an insufficient basis at this time to determine whether she has disaffirmed and so is not liable.

As to the services rendered by the plaintiff to the infant on her readmission to the hospital for complications resulting from the abortion, it is my opinion that as a matter of law, these services were reasonably medically necessary. Therefore, the defendant parents are liable to the plaintiff for the $954.45 charge for those services. On grounds of causation and the like, it can be logically argued that as the abortion was not a medical necessary for which the parents could be held liable, neither should they be held liable for the subsequent medical services, the need for which was occasioned by the abortion itself.

This argument would be more forceful if the need for those services arose while the infant was in the very process of being aborted or immediately following that procedure or before discharge from the admission to hospital confinement for performance of the procedure. In this case, however, the abortion had been completed and the infant discharged from the hospital admission made for that purpose. There had been a distinct physical and chronological break between that confinement and the second admission. Though the latter took place only one day later and was causally a result of the abortion, it was a new admission requiring new and at least in part different services.

Furthermore while the abortion was not necessary to the health or life of the infant, the services rendered on the new hospital admission were a medical necessity

for preservation of her health, well-being, and possibly life. These circumstances go beyond the simple break in chronology in establishing the liability of the parents for hospital services rendered their infant child. To say that parents could escape liability for needed and even imperative medical services rendered to their infant children because the need arose as a result of the disobedience or even rebelliousness of the infant would be too radical and dangerous a principle to establish; it would be one which the law could not countenance or support.

## November 15, 1984

This is a sequel to letter opinion in this case rendered May 25th, 1984. The remaining defendant, born October 8, 1962, when an infant slightly less than three months from her majority had at her own request and contrary to her parents' wishes an abortion July 10, 1980, at the plaintiff hospital. Hospital charges for that event were $389.75. After being discharged from the hospital a couple days, post-abortion complications required her re-entry, for which hospitalization costs were substantially more. Suit was commenced against the former infant and her parents January 5, 1982, for both expenses. The former opinion held that the parents, but not this defendant, were liable for the post-abortion expense only. That opinion held neither of the expenses constituted a necessary. The only remaining issue is whether the former infant is liable on her contract for the abortion services, which in turn involves whether subsequent to attaining majority she affirmed or disaffirmed that contract.

In laying the groundwork for decision and by way of narrowing the principles upon which it is based, the following factors are significant:

(1) The contract was not one for a necessary.

(2) The contract was one for services, not one for property, real or personal.

(3) The contract is neither fully executed nor fully executory. It is, however, fully executed with respect to the party supplying the services and wholly unexecuted on the part of the former infant.

(4) Affirmance or disaffirmance by an infant is

not involved but rather that of an adult of a contract made during infancy.

The first general principle is that in this country it is generally held that contracts of infants, whether executed or executory, are not absolutely binding nor are they void, but merely voidable at the election of the infant or former infant or confirmable by the latter. 42 Am. Jur. 2d, *Infants*, Section 58. This general principle presupposes the absence of statutory provision and it does not encompass contracts of infants enforceable as a matter of law, e.g., those entered into in pursuance of the performance of a duty imposed by law. The general rule that executed and executory contracts of infants are voidable, not void, is the rule in Virginia. *Wilson v. Branch*, 77 Va. 65, 71 (1883). Upon due disaffirmance, however, they become void *ab initio. Ibid.*

A contract made by an infant being voidable only (except in special situations mentioned in the preceding paragraph) its eventual status as enforceable or not depends on whether it is affirmed, i.e., ratified, or is disaffirmed. The equipoise between confirmed contract or voided contract balanced on the fulcrum of voidability is unbalanced in favor of the one or the other by evidence of affirmation or disaffirmation. In the event of the former the contract is enforceable, but if duly disaffirmed it becomes void.

Ratification or affirmation frequently imports some positive or active step to that end, but it need not do so necessarily for ratification has been termed "in legal effect merely a waiver of the defense of infancy or an abandonment of the infant's optional right to disaffirm." 42 Am. Jur. 2d, *Infants*, Section 123. Waiver frequently imports the lack of action, and abandonment ordinarily does so.

Though both executory and executed contracts of infants are voidable and enforceability of either depends on affirmation or disaffirmation, it has been held that executory contracts require for ratification greater confirmatory activity than do executed ones. *Ibid.*, Section 61. This contract is neither wholly executory nor wholly executed. It is executed in that the supplier of services has rendered them; it is executory in that the receiver of the services has not paid for them. In that situation

the Court's opinion is that less positive action is required.

The time in which the former infant after reaching majority exercises his right of avoidance is counterpart to his ratification by delay in avoidance. *Ibid.*, Section 87. As to the time limits on disaffirmance, "It may be assumed that such disaffirmance of the infant, upon arriving at full age, must be within a reasonable time, for such is the well settled doctrine," and what is a reasonable time in which to disaffirm is susceptible of no general rule for all cases but must depend on the circumstances. *Wilson, supra,* at pages 71 and 72. As to a reasonable length of time, there is authority that failure to disaffirm an executory contract for a considerable period after the former infant has attained majority will not imply a ratification, but also authority that this principle does not apply where the infant received benefit under the contract, and likewise authority that mere failure to disaffirm an executory contract for an unreasonable time after majority makes out an implied ratification even in the absence of any other circumstances supporting ratification, though, "Any *act* which clearly shows an intent to disaffirm a contract. . . is sufficient for the purpose." 42 Am. Jur. 2d, *Infants*, Section 135. (Emphasis added.)

Failure to disaffirm after reaching majority as an implied ratification depends on what is a reasonable time for disaffirmance, which must be gathered from the circumstance and is generally a matter for the fact finder. *Ibid., Infants*, Section 137. The determinative circumstances in the Court's view are first, that though the contract was executory on the part of the former infant, it had been fully executed by the other party, and the former infant as a result had derived full benefit from that execution. Second, that there is no possibility of returning the parties to the *status quo ante.* Third, that the former infant received statements of account for the services rendered for ten consecutive months, at least seven of which were transmitted after her reaching majority, and she took no action to disaffirm but merely ignored the statements. In this regard the Court is not sympathetic with authority that holds the former infant's knowledge or lack of knowledge of her right to avoid

by disaffirmance on reaching majority a contract made during infancy is an important factor. *See generally* 42 Am. Jur. 2d, *Infants*, Section 129. The law is that generally on reaching majority an infant may disaffirm contracts made during infancy and all adults, including those recently reaching legal adulthood, have at least constructive knowledge of the law.

The fourth circumstance considered is that the former infant suffered suit to be brought against her almost fifteen months after reaching majority and resisted it solely on the ground that the services rendered by the hospital were not a necessary with which she could be chargeable. She continued to allow the suit to pend without disaffirmance or without specific assertion of infancy as a defense until after the previous opinion had been rendered, an additional twenty-eight months later. It is true that in her memorandum of law in support of her position that the services were not a necessary she did say in her short conclusion that "any contractual liability for services performed is voidable," but only the question of necessaries is actually argued. To imply from such argument in a memorandum of law that the former infant was asserting a disaffirmance of the contract is too tenuous.

Finally, she has not to this day filed any plea of infancy. To assert infancy as a defense a special plea is necessary. 2 Williston, Contracts, Section 231 at page 23 (3rd ed. 1959). The Court, in resolving the other issues and finding the abortion services did not constitute a necessary, probably improvidently itself set up the issue of affirmance or disaffirmance, but did so in an effort to see full justice done.

In summary in this case the Court is of opinion that it was incumbent on the former infant within a reasonable time after reaching majority to take some positive act either *in pais* or by plea of infancy to disaffirm the contract, that she did not do so. In default of doing so the balance tips toward ratification, by implication, of the contract. As a consequence she is liable on it.